Filed 8/20/20  P. v. Plasencia CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>SALVADOR GABRIEL PLASENCIA,<br><br>    Defendant and Appellant. | H047043<br>(Monterey County<br>Super. Ct. No. SS990970A) |

## I.    INTRODUCTION

In 1999, in a case arising from two incidents, defendant Salvador Gabriel Plasencia pleaded guilty to murder (Pen. Code, § 187, subd. (a)),[1] attempted murder (§§ 664, 187, subd. (a)), and two counts of second degree robbery (§ 211) and admitted that a principal was armed with a firearm during the attempted murder (§ 12022, subd. (a)).  The superior court sentenced defendant to an aggregate term of 35 years to life.

In 2019, defendant filed a petition for resentencing pursuant to section 1170.95, which allows individuals convicted of felony murder or murder under the natural and probable consequences doctrine to petition the superior court to vacate the murder conviction based on recent changes to the law.  The superior court denied the petition, determining that defendant failed to establish a prima facie case for relief.

---

[1] All further statutory references are to the Penal Code.

Defendant contends that the superior court erred when it denied the petition, arguing that he established a prima facie case for relief and was entitled to an evidentiary hearing. The Attorney General initially asserted that defendant was not entitled to relief because the record showed defendant was a major participant in the robbery underlying the murder who acted with reckless indifference to human life. However, in a subsequent letter to this court, the Attorney General concedes that based on this court's decision in *People v. Drayton* (2020) 47 Cal.App.5th 965 (*Drayton*), the trial court erred in denying defendant's section 1170.95 petition at the prima facie stage.

For reasons that we will explain, we conclude that defendant stated a prima facie case of entitlement to relief. We will therefore reverse the superior court's order denying defendant's section 1170.95 petition for failure to make a prima face case for relief and remand the matter for the issuance of an order to show cause and an evidentiary hearing on defendant's petition.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    *Factual Background*[2]

On November 19, 1998, defendant and Jeffrey Concepcion robbed 77-year-old M.W. in Salinas. Defendant and Concepcion jumped out of a vehicle, ran up to M.W., knocked her into some nearby shrubs, and took her wallet. M.W. was again knocked down. While M.W. was face down on the sidewalk, Concepcion shot her twice in the back of her head and neck. Defendant and Concepcion fled. M.W. was taken to the hospital. As a result of the attack, M.W. was confined to a wheelchair.

On November 22, 1998, defendant and Concepcion confronted 70-year-old M.G. in front of his business in Salinas and demanded his wallet. M.G. refused and a struggle ensued. M.G. was struck and knocked to the ground, where his wallet was taken. While M.G. was held down on the ground, Concepcion shot him twice. Witnesses tried

_____

[2] Because defendant pleaded guilty before a preliminary hearing was held, the facts are taken from the probation report.

unsuccessfully to stop the attack and either defendant or Concepcion threw a bicycle at a witness. Defendant and Concepcion fled. M.G. was pronounced dead at the hospital.

On December 3, 1998, police interviewed defendant. Defendant admitted that he and Concepcion were responsible for the crimes. During a subsequent interview of Concepcion, Concepcion admitted that he and defendant were responsible for the crimes and that he possessed the gun. Concepcion also stated that he and defendant had conspired to commit the robberies.

Defendant was also interviewed by a probation officer, who described defendant as cooperative and visibly distraught. Defendant stated that before the incident with M.W., he spent the night at Concepcion's residence and had been partying and drinking most of the day. The idea to rob a store was discussed at some point when defendant was driving around in the backseat of a friend's vehicle. Defendant told the probation officer, " 'That didn't go down and we then saw this lady with a purse.' " Defendant stated that it was Concepcion's idea to rob the woman while the driver waited for them around the corner. Defendant said that he and Concepcion approached M.W. and he tried to take her purse, but she struggled, causing defendant to have to knock her to the ground. Defendant then forcibly took M.W.'s purse and "took off running when he heard two shots fired." Defendant admitted that he was aware Concepcion had a gun but stated that he did not think Concepcion would use it. Defendant said that he did not know Concepcion had shot M.W. because Concepcion told him that he had fired the gun into the ground. After they were picked up by the driver, defendant and Concepcion drove around for a while and then went back to Concepcion's house. They used the $70.00 they got in the robbery to buy food and more beer.

Regarding the incident involving M.G., defendant stated that he and Concepcion were again drinking during the course of the day and conspired to commit another robbery because they were out of money. Defendant was aware Concepcion had a gun. Defendant said that while he was walking and Concepcion was riding a bicycle, they saw M.G. and

3

targeted him. When they demanded money and M.G. refused, a struggle ensued. Defendant was able to get M.G.'s wallet and "took off running when he heard shots." Defendant and Concepcion ran and used a pay phone to get someone to give them a ride to Concepcion's residence. Defendant stated they got $300 in the robbery and he used his share to buy some shoes, clothes, and food.

Defendant stated that he had committed "these types of acts" with other friends before, but they had used BB guns or a screwdriver instead of "a real weapon." They generally targeted people who sold marijuana because they knew those people had money. Sometimes they also robbed strangers.

Defendant stated regarding the current incidents, " 'I didn't shoot them, I didn't have the gun. I knew I was in trouble, but didn't think I'd get blamed for murder. This whole thing backfired on me. I didn't know what I was getting myself into.' " Defendant could not explain the reason why he committed the robberies other than to get some money. Defendant said that he used to live with his aunt, but after moving into a trailer with his parents, there was never any stability. Defendant spent time at Concepcion's residence because he enjoyed the family atmosphere. Defendant stated that Concepcion was a big influence on him and he considered Concepcion to be an older brother to him. Defendant said that his gang affiliation was limited and although he did not claim, he often sided with the Norteños. Defendant had four dots tattooed on his hand, symbolizing Norteño.

Defendant was 17 years old at the time of the crimes. Concepcion was 19 years old.

**B.**  ***Procedural History***

### 1.  Charges, Plea, and Sentence

Defendant was charged with first degree murder (§ 187, subd. (a); count 1), two counts of second degree robbery (§ 211; counts 2 and 5), receiving or concealing stolen property (§ 496, subd. (a); count 3), and willful, deliberate, and premeditated attempted murder (§§ 664, 187, subd. (a); count 4). Regarding all of the offenses except receiving stolen property, it was alleged that a principal was armed with a firearm (§ 12022, subd. (a))

4

and that defendant inflicted great bodily injury on a person 60 years of age or older (§ 1203.09, subd. (a)). It was also alleged that the murder occurred during the commission of a robbery (§ 190.2, subd. (a)(17)(A)) and that defendant personally inflicted great bodily injury during the commission of the attempted murder and the robbery charged in count 5 (§ 12022.7, subd. (a)).

On June 16, 1999, after the district attorney moved to orally amend the complaint to delete "premeditated" from the attempted murder allegations, defendant pleaded guilty to first degree murder, both counts of second degree robbery, and willful and deliberate attempted murder. Defendant admitted the allegation that a principal was armed during the commission of the attempted murder.

The superior court sentenced defendant to 35 years to life and dismissed count 3 at the prosecution's request. Defendant appealed from the judgment and this court affirmed the conviction in a decision pursuant to *People v. Wende* (1979) 25 Cal.3d 436.[3] (*People v. Plasencia* (May 5, 2000, H020614) [nonpub. opn.].)

### 2. Section 1170.95 Petition and the Parties' Briefing

On April 2, 2019, defendant filed a petition for resentencing pursuant to section 1170.95. The petition consisted of a three-page preprinted form where defendant checked the box stating that he "pled guilty . . . to 1st or 2nd degree murder in lieu of going to trial because [he] believed [he] could have been convicted of 1st or 2nd degree murder at trial pursuant to the felony murder rule or the natural and probable consequences doctrine." The only other boxes defendant checked on the petition form were the boxes indicating that he requested counsel and had served the district attorney and public defender. Defendant did not check the box on the form indicating that he "could not now be convicted of 1st degree felony murder because of changes to Penal Code § 189, effective January 1, 2019."

---

[3] On our own motion, we take judicial notice of our prior opinion in *People v. Plasencia*, *supra*, H020614. (Evid. Code, § 452.) The prior opinion does not provide a factual summary of the crimes.

5

The superior court appointed defendant counsel.[4]  The district attorney filed an opposition to defendant's petition, contending that defendant failed to make a prima facie showing that he qualified for section 1170.95 resentencing.  The district attorney asserted that defendant was "a major participant in the commission of murder [*sic*] in the underlying felonies who acted with reckless indifference to human life."

Among the exhibits attached to the district attorney's opposition was the probation report that included the factual summary we provided above and a transcript of a police interview of defendant.[5]  During the police interview, when defendant was asked if he knew anything about the woman who had been robbed, defendant responded that he "heard . . . the news [¶] . . . [¶] [t]hat she got shot in the head."  Regarding the robbery of M.G., defendant stated that he and one other individual went to "Oldtown" to rob someone.  When defendant was asked whether he knocked the man to the ground, defendant stated that he took the man's wallet and the man tripped over defendant's feet.  Defendant admitted that he also kicked the man.  Defendant ran.  Defendant did not know why Concepcion shot the man.  When asked why Concepcion shot the woman in the prior robbery, defendant stated, " 'He's a trigger happy dude.  I don't know.' "  One of the detectives followed-up by asking, " 'He

_____

[4]  The superior court appears to have implicitly found that defendant's petition alleged that he could no longer be convicted of first degree murder based on changes to the law because he was not the actual killer, an aider and abettor in the murder who acted with an intent to kill, or a major participant in the robbery who acted with a reckless indifference to human life—despite defendant's failure to check the boxes on the preprinted petition form to make those allegations.  Otherwise, the superior court would have denied defendant's petition without prejudice instead of appointing defendant counsel and setting a briefing schedule.  (See § 1170.95, subds. (b)(2), (c); *People v. Verdugo* (2020) 44 Cal.App.5th 320, 327-328 (*Verdugo*), review granted Mar. 18, 2020, S260493 ["pursuant to section 1170.95, subdivision (b)(2), the sentencing court may deny a petition without prejudice if any of the information required by subdivision (b)(1) is missing from the petition and cannot be readily ascertained by the court. This initial review thus determines the facial sufficiency of the petition"].)  Neither party challenges the superior court's implicit finding of facial sufficiency.

[5]  It is unclear when the police interview was conducted, although a detective described the crimes as happening "just within the last week and a half or so."

6

is, huh?' " Defendant responded, " 'Probably is. That's the, that's the only thing that comes to my mind.' " Defendant also stated regarding Concepcion, " '[H]e's got the attention now. That's why he likes to shoot a gun, or something.' "

The district attorney relied on the probation report and the interview transcript to argue that defendant was not entitled to relief because he was a major participant in M.G.'s robbery and acted with reckless indifference to human life. The district attorney asserted that defendant conspired with Concepcion to commit the robbery, took M.G.'s wallet, kicked M.G. while he was on the ground, and "knew, at the time that [M.G.] was robbed, that his cohort would utilize potentially lethal violence against their victim, based upon their robbery of an elderly lady three days earlier who was also shot by Concepcion." The district attorney argued, "[W]hen [defendant] again conspired with Concepcion to rob an elderly person, he knew that his cohort was armed with a firearm and knew that he was trigger-happy and willing to shoot their victims, even after they had succeeded in robbing them. . . . [¶] [Defendant] knew of the injuries inflicted on the elderly woman, and yet he fled the scene when his cohort shot [M.G.], an elderly man. He made no attempts to help him or assess the extent of his injuries. [Defendant] did nothing to minimize the violence inflicted by his cohort nor did he do anything to prevent the victim from being shot."

The district attorney also contended that Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1015) (S.B. 1437), which enacted section 1170.95, was unconstitutional because it unlawfully amended Proposition 7 (Prop. 7, as approved by voters, Gen. Elec. (Nov. 7, 1978)) and Proposition 115 (Prop. 115, as approved by voters, Primary Elec. (June 5, 1990)).

Defendant filed a reply, contending that an order to show cause should be issued and a hearing held because he had established a prima facie case for relief. Defendant stated that he was convicted of murder as an aider and abettor and that "[t]he issue in this case will be whether [he] acted with reckless indifference to human life." Defendant asserted that he did not know Concepcion had shot M.G. because "he had run away and only heard the shots

7

fired." Defendant stated that he was unaware of Concepcion's "likelihood of killing" because he was not present when Concepcion shot M.W. and believed Concepcion when Concepcion told him that he had fired into the ground. Defendant argued that his statement during the police interview that he had heard on the news that M.W. had been shot did not establish that he had seen the news prior to the robbery of M.G., which occurred three days after M.W.'s robbery. Defendant emphasized his statement to the probation officer that he did not know what he was getting himself into and that the only difference between the "garden variety simple robberies" he committed in the past and the robberies of M.W. and M.G. was Concepcion. Defendant also argued that the district attorney's constitutional challenge to S.B. 1437 was meritless.

### 3. The Superior Court's Ruling

The superior court denied the petition for failure to establish a prima facie case of entitlement to relief. The court stated that it had reviewed the parties' papers and exhibits, including the probation report and the transcript of defendant's police interview, and the court's file. The court determined that based on the facts of the case, taking all inferences in favor of the petition, defendant could still be convicted of murder notwithstanding the changes to the law because the facts were "sufficient to establish that . . . defendant was a major participant in the underlying felony robbery of the murder victim and he acted with reckless indifference to human life." The court stated that it would not address the district attorney's constitutional claim.

In its ruling, the court recounted the facts of the robbery and attempted murder of M.W. and observed that defendant admitted to law enforcement that he was aware Concepcion had a gun but that he believed Concepcion had fired into the ground. The court next summarized the facts of the robbery and murder of M.G. The court noted that defendant and Concepcion had conspired to commit the robbery and that defendant had kicked M.G. while M.G. was on the ground. The court found that defendant then took

8

M.G.'s wallet. The court stated that defendant "again[] claimed that he ran away and heard the sounds of gunshots as he ran away from the victim."

The court continued: "[Defendant] was involved in the planning of both robberies, but for purposes of the first degree murder conviction, he was certainly involved in the planning of [M.G.'s] robbery. [¶] [Defendant] used physical force that overpowered [M.G.'s] efforts to keep his wallet, and he used physical force to keep [M.G.] on the ground when he kicked him. [¶] [Defendant] was aware that Concepcion possessed and fired a gun multiple times during the robbery of the elderly woman three or four days earlier, in a robbery that matched the same modus operandi where [defendant] also used physical force to overpower the elderly woman to take her purse and used physical power to disable her and render her vulnerable and susceptible to further attack. [¶] [Defendant] was aware that Concepcion was, quote, unquote, a trigger happy dude who sought attention and liked to shoot a gun. [¶] [Defendant] was present at the scene of the killing, was in a position to facilitate or prevent the actual murder and made no effort to render assistance to the victim after lethal force was used. [¶] Instead, he physically assaulted the victim, left him on the ground alone, with Concepcion, the person that he described as 'trigger happy' who sought the attention and who liked to shoot a gun, and he left that victim there for Concepcion to finish off."

### III. DISCUSSION

Defendant contends the superior court erred when it determined that his section 1170.95 petition failed to state a prima facie case for relief because there was evidence that defendant was not a major participant in the underlying robbery who acted with reckless indifference to human life. Defendant asserts that the superior court's task in determining whether a prima facie case had been established was "limited to whether, assuming the truth of [defendant's] allegations, there [was] a reasonable likelihood that

9

[defendant] may be entitled to relief" and that the court's "role at this stage was *not* to adjudicate disputed factual issues."**⁶**

### A. *Statutory Framework*

S.B. 1437, effective January 1, 2019, amended sections 188 and 189, which pertain to the definition of malice and the degrees of murder. (Stats. 2018, ch. 1015, §§ 2-3.) As amended, section 188 provides: "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).) Section 189, in turn, now limits liability for felony murder to a person who was either the actual killer or, though not the actual killer, (1) acted "with intent to kill" and "aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer" in the commission of first degree murder, or (2) was "a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (§ 189, subd. (e).)

"Additionally, [S.B.] 1437 added section 1170.95, which permits a person with an existing conviction for felony murder or murder under the natural and probable consequences doctrine to petition the sentencing court to have the murder conviction vacated and to be resentenced on any remaining counts if he or she could not have been convicted of murder as a result of the other legislative changes implemented by [S.B.] 1437. (§ 1170.95, subd. (a).)" (*People v. Flores* (2020) 44 Cal.App.5th 985, 992.) A petition for relief under section 1170.95 must include: "(A) A declaration by the petitioner that he or she is eligible for relief under this section, based on all the requirements of subdivision (a). [¶] (B) The superior court case number and year of the petitioner's conviction. [¶] (C) Whether the petitioner requests the appointment of counsel." (§ 1170.95,

---

**⁶** Defendant also contends that S.B. 1437 is constitutional. However, the superior court did not address the constitutionality of S.B. 1437 in its ruling and the Attorney General does not challenge S.B. 1437 here. We therefore do not reach the issue.

subd. (b)(1)(A)(C).) "If any of the [required] information . . . is missing from the petition and cannot be readily ascertained by the court, the court may deny the petition without prejudice to the filing of another petition and advise the petitioner that the matter cannot be considered without the missing information." (§ 1170.95, subd. (b)(2).)

Subdivision (c) of section 1170.95 "prescribes a two-step process for the court to determine if an order to show cause should issue: 'The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section. If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner. The prosecutor shall file and serve a response . . . and the petitioner may file and serve a reply . . . . If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause." (*Verdugo*, *supra*, 44 Cal.App.5th at p. 327, review granted Mar. 18, 2020, S260493.)

"Once the order to show cause issues, the court must hold a hearing to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts. (§ 1170.95, subd. (d)(1).) If the prosecutor does not stipulate to vacating the conviction and resentencing the petitioner (§ 1170.95, subd. (d)(2)), the People have the opportunity to present new and additional evidence at the hearing to demonstrate the petitioner is not entitled to resentencing. (§ 1170.95, subd. (d)(3).) The petitioner also has the opportunity to present new or additional evidence in support of the resentencing request. (*Ibid.*)" (*Verdugo*, *supra*, 44 Cal.App.5th at p. 327, review granted Mar. 18, 2020, S260493.) The burden of proof at the hearing is on the prosecution and the prosecution must prove beyond a reasonable doubt that the defendant is ineligible for resentencing. (§ 1170.95, subd. (d)(3).)

**B.** *Standard of Review*

Whether the superior court properly denied defendant's section 1170.95 petition for failure to state a prima facie case for relief involves multiple standards of review. We

11

review the court's factual findings for substantial evidence and the court's application of those facts to section 1170.95 de novo. (See *Drayton*, *supra*, 47 Cal.App.5th at p. 981.)

### C.  *Analysis*

In *Drayton*, *supra*, 47 Cal.App.5th at page 968, this court considered how a superior court should "assess whether a petitioner has made a prima facie showing of entitlement to relief under section 1170.95, subdivision (c), such that it must issue an order to show cause." This court held that the superior court should presume the petition's factual allegations are true unless the record contains facts refuting them as a matter of law. (*Drayton*, *supra*, at p. 980; see also *Verdugo*, *supra*, 44 Cal.App.5th at p. 328, review granted Mar. 18, 2020, S260493.) The superior court's authority to make credibility determinations without conducting an evidentiary hearing pursuant to section 1170.95, subdivision (d) "is limited to readily ascertainable facts from the record . . . , rather than factfinding involving the weighing of evidence or the exercise of discretion . . . ." (*Drayton*, *supra*, at p. 980.) As the parties concur, *Drayton* is dispositive here.

The district attorney in *Drayton* contested the defendant's allegation that he was not a major participant in the underlying robbery who acted with reckless indifference to human life. (*Drayton*, *supra*, 47 Cal.App.5th at p. 981.) The district attorney relied on preliminary hearing testimony to argue that the defendant went to the victims' home, participated in the robbery, and pointed a gun at one of the victims, rendering the defendant a major participant. (*Id.* at pp. 970, 981.) The district attorney asserted that the defendant's reckless indifference to human life was established by the fact that he brought his gun to the crime scene and did not assist the murder victim after he had been shot. (*Id.* at p. 970.)

The defendant in *Drayton*, on the other hand, contended that he had stated a prima facie case that he did not act with reckless indifference to human life because he never fired his gun and he tried to stop the robbery but was afraid because a coperpetrator pointed a gun at him. (*Drayton*, *supra*, 47 Cal.App.5th at p. 971.) The defendant asserted that he had armed himself for his own protection based on a prior incident, not to perpetrate the

robbery, he did not injure the victim he pointed his gun at, he prevented her from being killed, and he prevented another victim from being raped. (*Ibid.*) The defendant also argued that he was unaware of his coperpetrator's propensity for violence and emphasized that he had turned himself into the police. (*Ibid.*)

The superior court summarily denied the defendant's petition. (*Drayton*, *supra*, 47 Cal.App.5th at p. 971.) The court made extensive factual findings based on the preliminary hearing testimony and ruled that the defendant was a major participant in the underlying felonies who acted with reckless indifference to human life, which the court stated was "blatantly apparent by his conduct, being armed and his participation in this event, as well as the conduct of his co-conspirators, the other individuals." (*Id.* at p. 981.)

This court reversed, concluding that "[a]t this stage of the petition review process, governed by section 1170.95[,] [subdivision] (c), the trial court should not have engaged in this factfinding without first issuing an order to show cause and allowing the parties to present evidence at a hearing, as described in section 1170.95, subdivision (d)." (*Drayton*, *supra*, 47 Cal.App.5th at p. 982, fn. omitted.)

The California Supreme Court is currently considering whether "superior courts [may] consider the record of conviction in determining whether a defendant has made a prima facie showing of eligibility for relief under . . . section 1170.95." (*People v. Lewis* (2020) 43 Cal.App.5th 1128 (*Lewis*), review granted Mar. 18, 2020, S260598.)[7] Superior courts are grappling with what record materials may be considered when determining whether the defendant has made a prima facie case for relief and the California Supreme Court will provide guidance on the issue in *Lewis*.

Here, as we stated above, defendant pleaded guilty to the murder, and this court's decision affirming the judgment was made pursuant to *Wende*, *supra*, 25 Cal.3d 436 and

---

[7] The California Supreme Court is also considering in *Lewis* "[w]hen . . . the right to appointed counsel arise[s] under . . . section 1170.95, subdivision (c)." (*Lewis*, *supra*, 43 Cal.App.5th 1128, review granted Mar. 18, 2020, S260598.)

contained no factual recitation. (*People v. Plasencia*, *supra*, H020614.) Based on the allegations in the petition and the state of the record before the superior court, we conclude that defendant made a prima facie showing of entitlement to relief.

Defendant alleged in the section 1170.95 petition that he could no longer be convicted of felony murder because he did not act with reckless indifference to human life. Relying on the probation report and an interview transcript,[8] the superior court found that defendant had not made such a prima facie showing based partly on the court's determination that defendant left the victim "for Concepcion to finish off." As defendant argued, however, the record showed only that defendant ran at some point after the robbery was committed and that he told the probation officer that " '[he] didn't know what [he] was getting [him]self into.' " The record did not state that defendant ran "for Concepcion to finish [the victim] off." In addition, the court found that at the time of M.G.'s murder, defendant was aware of Concepcion's lethality based on defendant's statement to police, *after* the murder, that Concepcion was "[p]robably" "a trigger happy dude." The court further determined that defendant was at the scene of the killing despite defendant's statement to the probation officer that he " 'took off running' " and to the police that he "ran."

As in *Drayton*, the superior court weighed the evidence and made credibility determinations to resolve the disputed issue of whether defendant was a major participant who acted with reckless indifference to human life. (See *Drayton*, *supra*, 47 Cal.App.5th at p. 980.) Because this issue was contested and the record did not establish as a matter of law that defendant was a major participant who acted with reckless indifference to human life, an evidentiary hearing was the proper avenue in which to evaluate the disputed questions

---

[8] Defendant does not contend that it was improper for the trial court in making its decision to rely on the probation report or the transcript of a police interview attached as an exhibit to the district attorney's opposition.

14

about defendant's mental state and his degree of participation in the commission of the offense.

Accordingly, we will reverse the superior court's order determining that defendant failed to establish a prima facie case of entitlement to relief under section 1170.95. We remand the matter for the issuance of an order to show cause and a hearing on defendant's section 1170.95 petition. (See *Drayton*, *supra*, 47 Cal.App.5th at pp. 982-983; § 1170.95, subds. (c), (d).) We express no opinion regarding defendant's entitlement to relief following the hearing.

## IV. DISPOSITION

The superior court's order denying defendant's Penal Code section 1170.95 petition for failure to state a prima facie case is reversed. The matter is remanded to the superior court with directions to issue an order to show cause (Pen. Code, § 1170.95, subd. (c)) and hold a hearing on the petition (Pen. Code, § 1170.95, subd. (d)).

_____

BAMATTRE-MANOUKIAN, J.




WE CONCUR:






_____

PREMO, ACTING P.J.






_____

ELIA, J.






*People v. Plasencia*
**H047043**